United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CANDYCE MARTIN 1999
IRREVOCABLE TRUST,

    Petitioner,

    v.

THE UNITED STATES OF AMERICA,

    Respondent.
_____/

No. C 08-5150 PJH

**ORDER DENYING PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The motion of petitioner Candyce Martin 1999 Irrevocable Trust (petitioner") for partial summary judgment came on for hearing on December 9, 2009.  Petitioner appeared through its counsel, Jay R. Weill and Steven M. Katz.  The United States of America ("United States" or "government") appeared through its counsel, Joseph A. Sergi and Amy Matchison.  For the reasons that follow, the court DENIES petitioner's motion.

## BACKGROUND

This is a consolidated action[1] contesting the adjustment of certain partnership items proposed by the Internal Revenue Service ("IRS") in Notices of Final Partnership Administrative Adjustment ("FPAA") dated June 19, 2008, issued to First Ship 2000-A, LLC ("2000-A") for the taxable year 2000, and to First Ship, LLC ("First Ship") for the taxable year 2001.  Petitioner's motion for partial summary judgment relates only to the FPAA issued to 2000-A for the taxable year 2000.

On November 4, 2009, the parties stipulated to the following facts:[2]

---

[1] This action was consolidated on May 22, 2009, with the case of Constance Goodyear 1997 Irrevocable Trust et al. v. United States of America, Case No. C-08-5151 PJH.

[2] The United States of America does not concede that the transactions at issue occurred, or that they had the full effect alleged by petitioner.  Stipulation of Facts ("Stip."), n. 1.

Prior to the year 2000, the Martin family established fourteen trusts ("Martin family trusts"). Id. ¶ 2. In 2000, the Martin family trusts executed a series of transactions, in which several California limited liability corporations were formed, including First Ship and 2000-A. Id. ¶¶ 2, 3, 6-8. 2000-A was cancelled on December 28, 2000. Id. ¶ 14.

Both First Ship and 2000-A filed their Partnership Tax Returns, in which they reported income, gain, loss, and deductions for the year ending December 31, 2000. Id. ¶¶ 9, 11. In addition, Schedules K-1, issued to the members of 2000-A and First Ship, reported each member's distributive share of income, gain, loss, and deductions from 2000-A and First Ship, respectively. Id. ¶ 10, 12. Moreover, on Schedule D attached to its income tax return, First Ship reported a short term capital loss from the liquidation of its interest in 2000-A. Id. ¶ 11. Each of the fourteen Martin family trusts also reported on its 2000 tax return its distributive share of income, gain, loss, and deductions from First Ship, including its share of the short term capital loss reported by First Ship from the liquidation of its interest in 2000-A. Id. ¶ 13.

In 2004, the IRS commenced an audit of the partnership tax returns of 2000-A for the year 2000, and of First Ship for the years 2000 and 2001. Id. ¶ 16. On April 8, 2004, the IRS, the fourteen Martin family trusts, and the individual Martin family members executed Form 872-I, Consent to Extend the Time to Assess Tax as Well as Tax Attributable to Items of a Partnership ("Form 872-I" or "extension agreement"), for the tax year 2000. The parties signed several subsequent consents (collectively, "extension agreements"), each containing the same language. Id. ¶ 19.

Subsequently, on June 19, 2008, the IRS issued an FPAA to 2000-A, in which the IRS determined that certain items on the 2000-A tax return for the year ending December 31, 2000, should be disallowed, reversed, or abated. Id. ¶ 20.

Petitioner filed its Petition for Readjustment of Partnership Items under 26 U.S.C. § 6226 on November 12, 2008, and now seeks partial summary judgment with respect to the FPAA issued to 2000-A for the taxable year 2000.

**DISCUSSION**

A.     Legal Standard

Summary judgment is generally appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

B.     Motion for Partial Summary Judgment

Essentially, the issue before the court is whether the FPAA that the IRS issued to 2000-A on June 19, 2008 is barred by the statute of limitations. This question turns on the parties' dispute regarding the correct interpretation of the extension agreements the parties executed to extend the statutory assessment period. Petitioner argues that the agreements apply only to First Ship, and therefore extend the assessment period for First Ship only, and not for 2000-A. The United States, on the other hand, argues that the agreements encompass both First Ship and 2000-A, thereby extending the statutory assessment period for both companies.

1.     Structure of Entities

With respect to the three entities at issue in this case, the following chart illustrates the three-tier structure created by the Martin family:

| Tier 1 | Petitioner/Partners: Martin family trusts |
| Tier 2 | First Ship (extension agreement executed naming First Ship) |
| Tier 3 | 2000-A (FPAA issued to 2000-A on June 19, 2008) |

2.     Governing Legal Principles

Turning to the applicable provisions of the Internal Revenue Code, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. §§ 6221-6234, in order to create a unified procedure for determining partnership tax items, including audits, at the partnership level. Adams v. Johnson, 355 F.3d 1179, 1186-87 (9th Cir. 2004). While a partnership does not itself pay federal income tax, all individual partners report their distributive shares on their federal income tax returns. 26 U.S.C. §§

701, 702.

When conducting an audit, for partnerships with 100 or fewer partners, TEFRA requires that the IRS mail to each partner a notice of the beginning of a partnership audit, and an FPAA, explaining the reasons for any adjustments or determinations made by the IRS, as a result of the audit. Id. § 6223(a). A partner may contest the adjustments by filing a petition for a unified partnership administrative proceeding within ninety days in the Tax Court, a federal district court, or the Court of Federal Claims. 28 U.S.C. §§ 6226(a), 6226(b)(1). If a petition contesting adjustments in an FPAA is filed, all partners with an interest in the outcome are treated as parties, 26 U.S.C. § 6226(c), (d), and the court has jurisdiction to determine all "partnership items" to which the FPAA relates, 26 U.S.C. § 6226(f). Partnership items include items of income, gain, loss, deduction, or credit of the partnership, and are "more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3); 26 C.F.R. § 301.6231(a)(3)-1(a).

With respect to the limitations period, the statutory assessment period during which the IRS may conduct an assessment expires either three years from the date on which the partnership filed its tax return under section 6229, or three years from the date on which the individual partners filed their tax returns under section 6501. 26 U.S.C. §§ 6229(a), 6501. However, the Secretary and a taxpayer may agree to extend the three-year period for making an assessment. 26 U.S.C. § 6501(c)(4)(a).

In interpreting such extension agreements, the United States Supreme Court has determined that a consent to extend the time period for the assessment of tax is not a contract, but is instead "essentially a unilateral waiver of a defense by a taxpayer." Stange v. United States, 282 U.S. 270, 276 (1931); Pacific Coast Steel Co. v. McLaughlin, 61 F.2d 73, 79 (9th Cir. 1932). However, although the Ninth Circuit has not revisited the issue, in more recent years other circuits and the United States Tax Court have analyzed consents using contractual principles. Tolve v. Commissioner, 21 Fed. Appx. 73, 75 (3rd Cir. 2002); United States v. Hodgekins, 28 F.3d 610, 614 (7th Cir. 1994); Ripley v. Commissioner, 103

4

F.3d 332, 337 (4th Cir.1996); <u>Kronish v. Commissioner</u>, 90 T.C. 684, 693, 1988 WL 31959 (1988); <u>Hubert v. IRS</u>, 1996 WL 636112 at *2 (Aug. 30, 1996 C.D. Cal.) ("Contract principals are significant, however, because section 6501(c)(4) requires a written agreement, and [courts] look to the objective manifestations of mutual assent to determine the terms of such agreement.") (citing <u>Schulman v. Commissioner</u>, 93 T.C. 623, 639 (November 29, 1989)).  Thus, courts look to the 'plain meaning' of the form.  <u>Tolve</u>, 21 Fed. Appx. at 75; <u>Hodgekins</u>, 28 F.3d at 614; <u>Stenclik v. Commissioner</u>, 907 F.2d 25, 27 (2nd Cir.1990).

### 3. Analysis

Turning to the case at hand, both First Ship and 2000-A filed their tax returns for the 2000 tax year, on or about March 22, 2001.  Pet.'s Mot. 4.  In addition, each of the fourteen Martin family trusts filed its individual tax return for the same year on or before April 15, 2001.  <u>Id.</u> 5.  Accordingly, based upon the three-year statutory assessment period, in the absence of any extension agreements, the IRS had until April 15, 2004 to assess any taxes on either company.  However, because the parties executed several extension agreements, the first of which was signed on April 15, 2004, the statutory period, as extended, ended on June 30, 2008.  <u>See</u> Stip., ¶ 19 and Ex. 8.

The parties dispute whether the agreements extend the statutory period pertaining to First Ship only, or both First Ship and 2000-A.  Specifically, the dispute focuses on the italicized language contained in the following excerpt from the agreements:

> The amount of any deficiency assessment is to be limited to that resulting from any adjustment *directly or indirectly (through one or more intermediate entities) attributable to partnership flow-through items of First Ship, LLC,* and/or to any adjustment attributable to costs incurred with respect to any transaction engaged in by First Ship LLC, any penalties and additions to tax attributable to any such adjustments, any affected items, and any consequential changes to other items based on any such adjustments.  Stip., Ex. 8, page 6 (emphasis added).

Petitioner contends that the extension agreements extend the statutory period for First Ship only, and not 2000-A.  The United States, on the other hand, concedes that

5

2000-A is not an intermediate entity, but argues that the proposed adjustments in the FPAA issued to 2000-A are directly attributable to items on First Ship's returns; therefore, the proposed adjustments are encompassed by the extension agreement.

The plain language of the extension agreements limit the extension to two types of assessments: (1) those directly attributable to partnership flow-through items of First Ship; and (2) those indirectly, through an intermediate entity, attributable to partnership flow-through items of First Ship.  Turning to this second category first, any assessments indirectly attributable to First Ship through an intermediate entity are irrelevant, because parties both agree in their papers that First Ship is not an intermediate entity.  Resp.'s Opp. 15; Pet.'s Reply 4.  Thus, if the consent encompasses 2000-A, it must be because the proposed assessments in the FPAA issued to 2000-A are "*directly . . . attributable to partnership flow-through items of First Ship.*"

After reviewing First Ship's summary of gains and losses for the year 2000, reported in Schedule D attached to the company's tax return for that year, the court finds that the FPAA issued to 2000-A involves an adjustment directly attributable to flow-through items of First Ship.  See Stip., Ex. 6, page 6.  First Ship reported in its Schedule D that it suffered a loss of $318,018,377 as a result of 2000-A's liquidation on December 28, 2000.[3]  Id.  Noting the connection between the two companies, the FPAA issued to 2000-A by the IRS, states:

> 3. It is determined that the obligations under the short option positions (written options) transferred to FIRST SHIP 2000-A, LLC constitute liabilities for purposes of Treasury Regulation §1.752-6, the assumption of which by FIRST SHIP 2000-A, LLC shall reduce First Ship, LLC's basis in FIRST SHIP 2000-A, LLC in the amount of $314,885,516, but not below the fair market value of the purported partnership interest. Stip., Ex. 8, p. 10.

According to the above language contained in the FPAA, the IRS is attempting to adjust the liabilities claimed by 2000-A, which in turn, First Ship has passed through as its own losses.  The FPAA explains the direct connection between the two companies with

---

[3] 2000-A's Schedule D, attached to 2000-A's tax return for the tax year 2000, states that 2000-A was sold on December 29, 2000.  See Stip., Ex. 6, page 6.  However, both the Stipulated Facts and the Certificate of Cancellation, attached as Exhibit 7 to the Stipulated Facts, provide that 2000-A was cancelled on December 28., 2000.  Stip., ¶ 14 and Ex. 7.

6

respect to the assessments the IRS has made.  Thus, the liabilities adjusted in the FPAA issued to 2000-A are "directly . . . attributable to partnership flow-through items of First Ship LLC. . . ."  The FPAA issued to 2000-A therefore falls within the scope of the extension agreements executed by the parties.

In Brody v. Commissioner, 1988 WL 41363 (U.S. Tax Ct.), a similar case, the taxpayers maintained a tiered partnership structure, similar to that of the Martin family.  The taypayers comprised the first tier; BDB Properties ("BDB") served as the middle tier company; and Thunderbird Associates Ltd. ("Thunderbird") was the third-tier entity.  The taxpayers and the IRS executed an extension agreement with respect to Thundership, thereby extending the statutory period for deficiency assessments resulting from " . . . any adjustments which [a]ffect [the taxpayers'] basis in [Thunderbird]."  Id.  When the IRS issued a notice of deficiency to BDB after expiration of the initial three-year statutory period, the taxpayers requested summary judgment, arguing that the notice was not covered by the extension agreement, and was therefore time-barred.  The following is a chart illustrating the structure of the three entities:

| Tier 1 | Taxpayers/Partners |
| --- | --- |
| Tier 2 | BDB (notice of deficiency issued to BDB) |
| Tier 3 | Thunderbird (extension agreement naming Thunderbird) |

The United States Tax Court disagreed with petitioners, finding that the extension agreement encompassed the FPAA issued to BDB.  The court reasoned that "BDB, the parent partnership, was required to take into account in computing taxable income its share of partnership items from its subsidiary, Thunderbird."  Id.  Moreover, the court noted that the petitioners were "the ultimate taxpayers with respect to a share of all the partnership items reported by Thunderbird for 1978, to the extent such items are tiered up through BDB, and that they actually deducted a share of the losses reported by Thunderbird on their 1978 return."  Id.  "[H]ad the consent specifically named BDB, as petitioners claim is necessary, it would have been a different agreement with broader legal effect than the

7

subject consent . . . [allowing] any partnership item flowing from DBD into petitioners' return. . . ." Id.

Although the roles of the entities are reversed here, such that First Ship, the second tier entity, is the entity named in the extension agreement, and 2000-A, the third tier entity, is the company to which the FPAA was issued, the Brody case is analogous to the case at hand.  While, unlike in Brody, 2000-A was not required to take into account its share of partnership items from its parent company, First Ship, First Ship passed through as its own losses the liabilities claimed by 2000-A.  Accordingly, those liabilities, which were adjusted in the FPAA, are directly attributable to flow-through items of First Ship.  Moreover, petitioner and the other taxpayers involved in this case were the ultimate taxpayers for items claimed on the tax returns of both First Ship and 2000-A.  Finally, as the court noted in Brody, had the IRS specifically named 2000-A in the extension agreements, the legal effect of the agreements would have been much broader, allowing the IRS to make adjustments to any items reported by 2000-A, not only those directly attributable to flow-through items of First Ship.

Accordingly, the court finds that the extension agreements encompass the adjustments made by the IRS in the FPAA issued to 2000-A.  Since the extension agreements extended the statutory period to June 30, 2008, and the FPAA was issued on June 19, 2008, the FPAA is not time-barred.

## CONCLUSION

Therefore, in accordance with the foregoing, the court hereby DENIES petitioner's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: December 11, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge

8